No. 4037.

(Court of Appeal, Parish of Orleans.)

## W. F. TAYLOR CO , LTD. vs. TEXAS & PACIFIC R. R. CO.

1. Where goods are delivered in good condition to the initial carrier and are delivered in a damaged condition to the consignee by the last carrier, the last carrier will be presumed at fault, and will be held liable unless it can show that the damage did not occur on its line.

2. The reason for this rule is found in the fact that the goods are in the exclusive charge of the carriers from the point of shipment to the point of delivery, and that evidence of the cause and extent of the damage is peculiarly within the knowledge and power of production of the carriers.

Appeal from Civil District Court, Division B.

Carroll & Carroll, for plaintiff and appellant.

Howe, Spencer & Cocke, for defendant and appellee.

DUFOUR, J. On February 2, 1902, a shipment of corn purchased by plaintiff for $583.92 was delivered to the Missouri Pacific R. R. Co. in good condition at Kansas City, Mo., and was received by the defendant at Texarkana on March 6th, 1902, and was by it transported to Shreveport, where the corn arrived on March 7th, 1902.

On March 8th, 1902, defendant notified plaintiff of such arrival and delivered the car to the Cotton Belt R. R. which is the only road having a switch or track to plaintiff's warehouse in Shreveport. This was done in accordance with the uniform custom of all the lines hauling Kansas City grain shipments to deliver the same to Shreveport consignees at such warehouse as they may designate, and to pay the switching charge to the railroad on whose track the warehouse is situated, and which undertakes without charge to the consignee to make the delivery.

The Cotton Belt R. R. did not deliver the corn until March 28th, and it was found to be badly damaged. Upon being notified of this, defendant instructed plaintiff to reload the corn, took possession of it, sold it at public auction for $199.54 and tendered this amount to the plaintiff who refused

55

it and who brought this suit to recover the full value of the corn.

The plaintiff's contentions are :

1st. That defendant by its unreasonable delay in delivery caused the damage.

2nd. That by taking back the car of corn in a damaged condition, defendant admitted its liability for the damage and practically consummated a conversion of the corn.

It is not disputed that where goods are delivered in good condition to the initial carrier and are delivered in a damaged condition by the last carrier, the latter will be presumed at fault, and held liable unless it can show that the damage did not occur on its line. The reason for this rule is found in the fact that the shipper does not see the goods which are in the exclusive charge of the carriers from the point of shipment to the point of delivery, and that evidence of the cause and extent of the damage is peculiarly within the knowledge and power of production of the carriers.

There can be no question that, under the facts shown, the Cotton Belt Road was the delivering agent of the defendant and that the latter must be held for the damage occurring during the long delay between March 8th and March 28th.

Here lies the weakness of defendant's case, it introduced no evidence whatsoever as to the extent of the damage at the time it received the goods, so as to furnish a basis for estimating the damage occurring while the corn was in its custody through its representative, the Cotton Belt. Instead of this, defendant rested on statements made by plaintiff's witnesses to the following effect.

"It is my opinion that the car of corn was damaged before it ever reached Shreveport, because it was very, very badly damaged and as a rule corn will damage considerably when it is enclosed in a car for thirty odd days."

And again :

"From the condition of the car when we unloaded it, it is our candid opinion that the car of corn was badly damaged before it ever reached Shreveport, x x x x and we believe furthermore that the car was badly damaged before it was delivered to your line at Texarkana."

These admissions prove much, but they do not prove enough for purposes of the defense, for it requires no argu-

ment to show that grain, in a deteriorating condition must have further deteriorated in the twenty days during which it was held by the Cotton Belt.

Had the defendant, warned as it must have been by the way bill of the delay in transportation from Kansas City to Texarkana and the probable consequent injury to the shipment, taken the precaution of inspecting the car upon its arrival at Shreveport, the proof would have been secured. The defendant's failure to do this must be visited upon it and cannot properly affect the rights of the plaintiff, whose means of inspection were certainly not equal to defendant's and who should not be relegated for relief to the courts of another jurisdiction, in a matter in which such plaintiff is not at fault. The taking back of the corn by defendant after delivery cannot be viewed as a conversion but, under the surrounding circumstances, it is in the nature of an admission of liability. The testimony of plaintiff's witnesses is that the corn was reloaded and returned under defendant's instructions, without reservation, condition or agreement that this was to be done for plaintiff's account or to minimize the loss in the interest of the one upon whom it might fall. Battle, the Shreveport agent of defendant, was not produced as a witness, and, Looby, another agent at the time, disclaims any recollection of the occurrence. The most probable theory is that, if defendant was not acting on its responsibility and in its own interest, it would not have taken back the corn, but would have, at that crucial moment, referred plaintiff for settlement to Missouri Pacific and Cotton Belt Roads. Contemporaneous acts are more convincing than elaborate theories wrought out for purposes of defense.

Judgment reversed, and it is now ordered that there be judgment in favor of plaintiff, the W. F. Taylor Co., Ltd., and against defendant, the Texas and Pacific Railway Co. for the sum of $583.92-100 with legal interest from judicial demand until paid, defendant to pay the costs of both courts.